O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERMAN & ZARRABIAN LLP dba MYERS ANDRAS SHERMAN & ZARRABIAN LLP, a California limited liability partnership,<br><br>            Plaintiff,<br><br>   v.<br><br>ADERANT NORTH AMERICA, INC., a Florida corporation; ADERANT CASE MANAGEMENT LLC, a Delaware limited liability company; ADERANT LEGAL HOLDINGS, INC., a Delaware corporation; eta l.,<br><br>           Defendants. | Case No. CV 14-09676 DDP (RZx)<br><br>ORDER GRANTING SHAREHOLDERS' MOTION TO DISMISS<br><br>[Dkt. No. 19] |

Presently before the Court is Defendants **Jose Fernandez, Kevin Dunn, Matthew McIsaac, Kevin Wydra, Peter Whang, Warren Merkel, Carl Mack, Michael Province, Alice Vaccarello, and Lori Fullmer** (collectively, the "Shareholders")'s Motion to Dismiss for Failure to State a Claim. (Dkt. No. 19.) Having considered the parties' submissions, the Court GRANTS Shareholders' Motion to Dismiss and adopts the following order.

## I. BACKGROUND

Plaintiff Sherman & Zarrabian LLP ("Plaintiff") is a law firm. (Third Amended Complaint ("TAC"), Dkt. No. 1-2, ¶ 27.) Plaintiff filed this breach of contract, negligent misrepresentation, and fraud action against Shareholders and other parties, alleging that the defendants are liable for failure to install, configure and maintain on Plaintiff's computer network integrated law office document management storage and financial services software ("DMS software") on Plaintiff's computers. The other defendants in this lawsuit are Aderant North America, Inc., Aderant Case Management LLC, and Aderant Legal Holdings, Inc. (collectively, "Aderant"), as well as LAHC-CPMG, Inc., LAHC-CPFS, Inc., and LAHC-CPPM, Inc. (Collectively, "Client Profiles").

Client Profiles is a company that developed DMS software. The Shareholders are all shareholders of Client Profiles. (TAC ¶¶ 8-18.) In December 2010, Client Profiles sold licenses for its DMS software to Plaintiff. (Id. ¶ 28.) The contract gave Plaintiff licenses for the DMS software and stated that Client Profiles would install and configure the DMS software and maintain it for three years. (Id. ¶ 29.) Plaintiff paid a 50% deposit of $14,000 at the signing of the contract. (TAC Exh. A.) In April 2011, Plaintiff alleges that Client Profiles attempted to install and configure the DMS software on Plaintiff's computer network, but that it became apparent the DMS software was faulty and did not work as Client Profiles had represented to Plaintiff. (TAC ¶ 31.) In the following months, from April 2011 through October 2011, Plaintiff alleges that Client Profiles tried and failed to fix the issues with the DMS software. (Id. ¶¶ 32-35.) From November 2011 to

January 2012, Plaintiff alleges that Client Profiles discontinued work on Plaintiff's computers and stopped communicating with Plaintiff. (Id. ¶ 35.) Plaintiff alleges that, unbeknownst to it, Client Profiles had entered into asset purchase agreements with Aderant on or about August 22, 2011, whereby Aderant acquired Client Profiles. (Id. ¶¶ 36-37.) Pursuant to these agreements, Client Profiles liquidated the assets of Client Profiles while Aderant disclaimed all pre-acquisition liabilities of Client Profiles. (Id. ¶ 36.)

Plaintiff alleges that Client Profiles fraudulently misrepresented that its software would work on Plaintiff's network and that it had certain features and functionalities. (Id. ¶ 28.) Plaintiff claims Defendants Client Profiles and Aderant entered into two asset purchase agreements with the knowledge that the DMS software was faulty and with the intent to hide that fact from creditors and third parties. (Id.) Plaintiff further alleges that Client Profiles and the Shareholders fraudulently transferred all of Client Profiles' assets to Aderant and thereby prevented Plaintiff from collecting on its claims against Client Profiles. (Id. ¶¶ 84-102.)

Plaintiff filed this Third Amended Complaint, alleging the following causes of action: (1) Breach of Written Contract; (2) Breach of Verbal Contract; (3)Fraud; (4) Common Counts; (5) Negligent Representation; (6) Actual Fraudulent Transfer; (7) Constructive Fraudulent Transfer. The only causes of action Plaintiff asserts against the Shareholders are the sixth and seventh causes of action, for actual and constructive fraudulent

transfer.  The Shareholders now move to dismiss, alleging that Plaintiff has failed to state claims against them.

**II.  LEGAL STANDARD**

A 12(b)(6) motion to dismiss requires the court to determine the sufficiency of the plaintiff's complaint and whether or not it contains a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Under Rule 12(b)(6), a court must (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them.  See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001); Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).

In order to survive a 12(b)(6) motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Dismissal is proper if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008); see also Twombly, 550 U.S. at 561-63 (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief).  A complaint does not

suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> The Court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." <u>Warren v. Fox Family Worldwide, Inc.</u>, 328 F.3d 1136, 1139 (9th Cir. 2003).

### III. DISCUSSION

California Civil Code section 3439.04(a) states that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation" (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and either (a) the debtor either was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or intended to incur, or (2) believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due. Cal. Civ. Code § 3439.04(a). Section 3439.04(a) thus provides causes of action for both actual fraudulent transfer, by proving actual intent, and constructive fraudulent transfer, by transferring assets without receiving reasonably equivalent value and in disproportionate relation to outstanding debts.

California Civil Code section 3439.04(b) provides certain factors for Courts to consider in determining fraudulent intent:

5

    (1) Whether the transfer or obligation was to an insider.
    (2) Whether the debtor retained possession or control of the property transferred after the transfer.
    (3) Whether the transfer or obligation was disclosed or concealed.
    (4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
    (5) Whether the transfer was of substantially all the debtor's assets.
    (6) Whether the debtor absconded.
    (7) Whether the debtor removed or concealed assets.
    (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
    (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
    (10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.
    (11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Cal. Civ. Code § 3439.04(b).

    As an initial matter, the Shareholders argue that Plaintiff cannot state a claim for fraudulent transfer because Plaintiff is not a "creditor" of Client Profiles within the meaning of the statute. The Shareholders argue that if anyone is a creditor in the relationship, it would be Plaintiff, as Plaintiff never paid

6

the yearly maintenance fees or remaining 50% due on the contract with Client Profiles. Even if Plaintiff is a "creditor," the Shareholders argue, Plaintiff cannot state a claim for either actual or constructive fraudulent transfer because Plaintiff's claims are neither plausible nor pled with the requisite specificity for fraud claims.

The Court finds that regardless of whether or not Plaintiff is a true "creditor" of Client Profiles, it has failed to state a claim against the Shareholders in its causes of action for actual and constructive fraudulent transfer. Plaintiff's contract was with Client Profiles, and the purchase agreements regarding the sale of Client Profiles' assets was between Aderant and Client Profiles. The Shareholders were not an actual party to either Plaintiff's contract or the purchase agreements. It is unclear to the Court how Plaintiff intends to hold the Shareholders directly liable for fraudulent transfer, as they were not actual parties to the sale and there are no allegations against the Shareholders separate from the allegations against Client Profiles. The only clue arises from Plaintiff's allegations that "Defendants are jointly and severally liable as the alter egos, conspirators, aiders and abettors, and/or agents of each other." (TAC ¶¶ 90, 100.) The only potentially plausible argument contained within this allegation would be that Plaintiff argues the Shareholders are liable as the alter egos of Client Profiles.

Plaintiff has not stated claim against Shareholders because the alter ego doctrine does not apply to the facts of this case as pled. The Ninth Circuit has held that the general standard for alter ego liability is as follows:

7

> Before the acts and obligations of a
> corporation can be legally recognized as those
> of a particular person, and vice versa, the
> following combination of circumstances must be
> made to appear: First, that the corporation is
> not only influenced and governed by that
> person, but that there is such a unity of
> interest and ownership that the individuality,
> or separateness, of the said person and
> corporation has ceased; second, that the facts
> are such that an adherence to the fiction of
> the separate existence of the corporation
> would, under the particular circumstances,
> sanction a fraud or promote injustice.

Firstmark Capital Corp. v. Hempel Fin. Corp., 859 F.2d 92, 94 (9th Cir. 1988) (quoting Wood v. Elling Corp., 20 Cal.3d 353, 365 n. 9 (1977). Factors to be considered in determining the application of the alter ego doctrine include Among the factors to be considered in applying the doctrine are "commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." Associated Vendors, Inc. v. Oakland Meat Co., 210 Cal. App. 2d 825, 837 (1962). These factors are not present when looking at the TAC. The facts do not support a finding of unity of interest and ownership or a finding that to hold otherwise would sanctioning a fraud or promote injustice. Client Profiles has multiple

8

shareholders and it does not appear from the pleadings that even one of them exercises any kind of influence over Client Profiles' actions. The fraudulent transfer allegations refer to "defendants" or "Client Profiles and Shareholders" collectively, without any indication that the Shareholders directed, controlled, or influenced the Aderant transactions in any way.

**IV. CONCLUSION**

For the foregoing reasons, the Shareholders' Motion to Dismiss is GRANTED with prejudice.

IT IS SO ORDERED.

Dated: March 31, 2015

DEAN D. PREGERSON
United States District Judge